UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| JEFFREY PAUL GIOGLIO, | ) | |
| # 737147, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:13-cv-1093 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| WILLIE O. SMITH, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## **MEMORANDUM OPINION**

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner's criminal convictions stem from his sexual molestation of TB, his six year old niece.  On July 15, 2009, a Kalamazoo County Circuit Court jury found petitioner guilty on two counts of second-degree criminal sexual conduct (CSC II) (sexual contact with a person under age 13), Mich. Comp. Laws § 750.520c(1)(a) and one count of attempted CSC II, Mich. Comp. Laws §§ 750.92, 750.520c(1)(a).

On August 12, 2009, Judge Pamela Lightvoet sentenced petitioner as an habitual offender, second felony offense, to concurrent terms of eighty months to 22 ½ years, five to 22 ½ years, and eighteen months to 7 ½ years' imprisonment.  On October 3, 2013, petitioner filed his federal habeas corpus petition through Attorney Christine Pagac.

Petitioner seeks federal habeas corpus relief on the following grounds:

I.      DOES THE STATE COURT'S DECISION REST ON A READING OF *CRONIC* THAT IS CONTRARY TO THAT CASE AND ITS PROGENY, PARTICULARLY *BELL V. CONE*, AND IS IT AN UNREASONABLE APPLICATION OF THAT PRECEDENT?

II.     UNDER THE FRAMEWORK ESTABLISHED IN *CRONIC*, DID PETITIONER RECEIVE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND SHOULD THE MICHIGAN COURTS' DETERMINATIONS TO THE CONTRARY BE REVERSED?

(Petition at 3, ECF No. 1, PageID.4; Petitioner's Brief at ii, ECF No. 1, PageID.9).

Respondent has filed an answer to the petition. Respondent argues that the petition should be denied for lack of merit. (Respondent's Answer, 35-64, ECF No. 7, PageID.136-65).

After review of the state-court record, the Court finds that the grounds raised by petitioner lack merit and do not provide a basis for granting federal habeas corpus relief. Accordingly, the petition will be denied.

## Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of

-2-

rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S.
Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be
applied.   28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011);
*Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328,
341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court
proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).   AEDPA
prevents federal habeas "retrials" and ensures that state court convictions are given
effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).   It
prohibits "using federal habeas corpus review as a vehicle to second-guess the
reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012)
(*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be."
*Harrington v. Richter*, 562 U.S. 86, 102 (2011).   "Section 2254(d) reflects the that
habeas corpus is a guard against extreme malfunctions in the state criminal justice
systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03
(citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376
(2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf
of a person who is incarcerated pursuant to a state conviction cannot be granted with
respect to any claim that was adjudicated on the merits in state court unless the
adjudication "(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief

-4-

under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## Findings of Fact

### A.    Circuit Court Proceedings

Petitioner's trial began on July 14, 2009, and it concluded on July 15, 2009, with the jury's verdict finding petitioner guilty on all three charges. (Trial Transcripts, TT I-TT II, ECF No. 8-2, 8-3).

TB's mother testified that in 2004, she and her family were living at her mother's house in Kalamazoo. (TT I, 193). Petitioner is her half-brother. He was also living at that residence. (TT I, 194). One evening, she went to check on her daughter and found petitioner in the room. (TT I, 197). Petitioner was sitting at a desk chair in his pajama bottoms. Her daughter, TB, was straddling petitioner across his lap wearing nothing other than her underwear. She could see that petitioner's penis was

erect. TB's mother told petitioner to get out of the house. (TT I, 198-200). She did not contact Child Protective Services (CPS) at that time. (TT I, 201-02). In 2008, one of TB's teachers contacted CPS. (TT I, 165-68, 200).

TB's grandmother confirmed that petitioner had been living in the house at the time in question. (TT I, 215). She testified regarding an occasion where TB had been playing with petitioner and she came indoors with her zipper down. (TT I, 222). Later, when she confronted petitioner, he denied any inappropriate touching. Petitioner went on to say that he and TB loved each other and they wanted to get married and have children. TB's grandmother advised petitioner that TB was a child and he was an adult. She stated that petitioner did not seem to understand that the relationship with TB he had described was inappropriate and illegal. (TT I, 224-25).

TB was eleven years old on the date that she testified at petitioner's trial. (TT I, 170). She referred to petitioner as Uncle Jeff. She identified him in court. (TT I, 191). She testified that during the period from late 2003 into 2004, she was living with her grandmother. Petitioner was living with TB and her mother at her grandmother's house. (TT I, 173-74). TB described how, on one occasion, petitioner French-kissed TB in the mouth and kissed her all over her body, including her arms, legs and neck. (TT I, 175-79). On another occasion, petitioner unzipped his pants and stuck his penis through the zipper hole and forced her to touch it, hold it with both hands, and lick it. (TT I, 179-81). On another occasion, petitioner had TB unzip her pants. He pulled down her underwear and he kissed her private area. (TT I, 182-84). The last incident occurred in TB's bedroom. Petitioner told TB to get up on his lap with her legs spread

-6-

apart facing him.  Petitioner had unzipped his pants, and his pants and boxers were folded down.  Petitioner asked TB to touch his penis.  At that time, TB's mother walked in and told petitioner to get out.  (TT I, 185-90).

A detective testified that petitioner was questioned and denied any inappropriate conduct.  Petitioner conceded that TB's mother came in and found TB on top of him while he was wearing his boxer shorts.  He reported that his penis was not exposed.  (TT I, 233).  A mental health therapist gave expert testimony indicating that sexually abused children tend not to disclose such incidents right away  (TT II, 259-84).

On July 15, 2009, the jury found petitioner guilty on two counts of second-degree criminal sexual conduct (CSC II) (sexual contact with a person under age 13), Mich. Comp. Laws § 750.520c(1)(a) and one count of attempted CSC II, Mich. Comp. Laws §§ 750.92, 750.520c(1)(a).  (TT II, 329-32; *see also* ECF No. 8-4).

On August 10, 2009, Judge Lightvoet conducted a sentencing hearing.  She initially sentenced petitioner using the maximum sentences without any habitual-offender enhancements. (ECF No. 8-5).  On August 12, 2009, Judge Lightvoet held a supplemental sentencing hearing to correct the maximum sentences.  (ECF No. 8-6).  The judge indicated that she gave petitioner "the wrong maximum."  She then resentenced petitioner and increased the maximum sentences for each conviction as provided under Mich. Comp. Laws § 769.10.

Petitioner's appellate counsel filed a motion for a new trial.  (ECF No. 8-7).  On February 26, 2010, Judge Lightvoet conducted a hearing on the motion. (ECF No. 8-9).  She heard testimony from petitioner's trial attorney (*Id.* at PageID.592-641) and the

-7-

prosecuting attorney (*Id.* at PageID.574-90).  Judge Lightvoet also heard argument on the motion for a new trial.  Petitioner's appellate attorney argued that the *Cronic*[1] standard should apply.  The prosecuting attorney argued that *Strickland*[2] provided the proper standard, that the purported errors were matters of strategy, and petitioner had not shown prejudice under *Strickland*.  (*Id.* at PageID.641-50).

On March 22, 2010, Judge Lightvoet entered her opinion and order denying petitioner's motion for a new trial.  (ECF No. 8-10)  She held that *Cronic* was not the appropriate standard.  *Strickland* was the correct standard.  (*Id.* at PageID.652).

Petitioner argued that his counsel had been ineffective in (1) failing to give an opening statement, (2) failing to cross-examine the minor victim, and (3) disclosing client confidences.  Judge Lightvoet found that petitioner failed to overcome the presumption that his attorney's actions were matters of trial strategy.  The decision not to give an opening statement was a reasonable strategic decision.  (*Id.* at PageID.653).  Likewise, it was reasonable for defense counsel not to question the minor.  "There are certainly pros and cons to consider when cross examining a young witness."  Defense counsel's explanations for her actions were logical and reasonable."  (*Id.*).

---

[1] *United States v. Cronic*, 466 U.S. 648 (1984).

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

Judge Lightvoet also rejected petitioner's argument that his attorney had disclosed confidences and exhibited hostility towards him:

> Defendant also argues that his counsel violated the Rules of Professional Conduct, disclosed confidence and exhibited hostility toward him. At the hearing there was conflicting testimony from the Assistant Prosecuting Attorney and Defense Attorney. They had different views about the discussions/events that took place off the record throughout this case. It is unfortunate, but it is clear to this Court, that there was animosity and lack of respect between the attorneys that tried the case. Given the testimony from defense counsel, the handling of matters outside of the Court lacked professionalism at times. However, the Court does not find that such actions rise to the level of ineffective assistance of counsel, or that defense counsel's actions fell below an objective standard of reasonableness under prevailing professional norms.

(*Id.*).

Judge Lightvoet found no prejudice. "[G]iven the evidence presented at trial, Defendant has not established a reasonable probability that the outcome of the [t]rial would have been different in the absence of defense counsel[']s actions." (*Id.*). Judge Lightvoet denied petitioner's motion for a new trial. (*Id.* at PageID.654).

## B.   Subsequent Proceedings

Petitioner pursued a direct appeal in the Michigan Court of Appeals. Petitioner's appellate counsel continued to argue that *Cronic* standard rather than *Strickland* applied. Two members of the appellate panel concluded that petitioner's trial lawyer, Susan Prentice-Sao, did not subject the prosecution's case to meaningful adversarial testing and then presumed that petitioner had suffered prejudice as provided under *United States v. Cronic.* (ECF No. 8-12, PageID.674-93). A third judge of the appellate panel disagreed with the majority's conclusion that prejudice should

be presumed under *Cronic* and she wrote a lengthy dissent. (ECF No. 8-12, PageID.694-710). The dissenting judge asserted that petitioner's claim of ineffective assistance of counsel had to be evaluated under the test for ineffective assistance of counsel established in *Strickland*. (ECF No. 8-12, PageID.674-710).

On September 21, 2011, the Michigan Supreme Court issued its decision reversing the decision of the Michigan Court of Appeals. It held that "for the reasons stated in the Court of Appeals dissenting opinion," the *Cronic* standard did not apply. (ECF No. 8-13, PageID.832). The Michigan Supreme Court remanded the matter back to the Court of Appeals "for consideration of whether defense counsel's performance was ineffective under *Strickland,*" in addition to consideration of petitioner's remaining issue on appeal. (ECF No. 8-13, PageID.832).

On November 15, 2011, the Michigan Court of Appeals determined that, before it could analyze petitioner's claims under the *Strickland* standard, it was necessary to remand this case to the trial court for resolution of certain factual disputes. (ECF No. 8-12, PageID.776-77).

On January 11, 2012, the trial court entered its opinion and order resolving those factual disputes. (ECF No. 8-11, PageID.655-63).

### 1.    Attorney-Client Privilege

Petitioner argued that Attorney Prentice-Sao betrayed his attorney-client communications by telling the prosecutor that he had admitted to committing the charged conduct. The trial court found that Attorney Prentice-Sao did not intentionally disclose any privileged communications to the prosecutor. Rather, the

trial court found that the conversations did not amount to a betrayal of confidence, but appeared "to be related to plea negotiations." (*Id.* at PageID.660-61).  The trial court implicitly accepted Prentice-Sao's version of events that any statements she had made to the prosecutor were proper and related to petitioner's ability to enter a valid plea. Petitioner failed to establish the factual predicate of his claim.  He failed to establish that Prentice-Sao actually betrayed his confidential communications to the prosecutor. (*Id.*; *see also* ECF No. 8-12, PageID.669).

2. Bias

Petitioner argued that Attorney Prentice-Sao had a bias against him, and that the bias amounted to an actual conflict of interest under *Mickens v. Taylor*, 535 U.S. 162 (2002).  Petitioner's bias claim was predicated on his allegations that Ms. Prentice-Sao mimicked his speech impediment, that she said she could not stand to look at him, that he made her sick, and that she expressed pleasure after he received a lengthy sentence.  Petitioner asserted that counsel's purported bias adversely affected her performance.

The trial court rejected petitioner's claims that Attorney Prentice-Sao "had a bias against her client and acted on that bias." (ECF No. 8-11, PageID.661).  The court explained that Prentice-Sao's "actions during the case and her testimony [were] not consistent with the allegations that her actions were affected by any bias." (*Id.*).  The trial court implicitly found credible Prentice-Sao's testimony that she "was concerned about [Gioglio's] well-being throughout the case," and the court found that Prentice-Sao

-11-

"seemed to be doing what she could to protect [Gioglio]." (*Id.*; *see also* ECF No. 8-12, PageID.669-70).

### 3.    Failure to Cross-Examine

Petitioner argued that Prentice-Sao's decision to not cross-examine the complainant fell below an objective standard of reasonableness under prevailing professional norms. He maintained that Prentice-Sao's decision was not motivated by trial strategy, but by her inability to question a child victim of sexual abuse and her contempt for him.

Judge Lightvoet found that counsel's decision not to cross-examine TB was reasonable trial strategy. She did not want to keep this witness on the stand any longer than necessary because further testimony could seriously damage her client. There was the potential for the information to be amended to add the more serious charge of first-degree criminal sexual conduct and a potential life sentence. Further, inconsistencies in TB's testimony could be brought out through other witnesses. Further, Judge Lightvoet was "not convinced that [Prentice-Sao] refused to cross-examine the victim because she believed that her client was guilty or because she believed that the victim did not deserve to be put through a cross-examination." (ECF No. 8-11, PageID.662). She summarized petitioner's trial attorney's testimony and implicitly found that the attorney's version was credible. Petitioner failed to establish that Prentice-Sao's decision to not cross-examine TB fell below an objective standard of reasonableness under prevailing professional norms. (*Id.*; *see also* ECF No. 8-12, PageID.670-71).

On March 20, 2012, the Michigan Court of Appeals applied the *Strickland* standard and upheld petitioner's convictions. (ECF No. 8-12, PageID.664-73).

On October 4, 2012, the Michigan Supreme Court, in lieu of granting leave to appeal, vacated the maximum sentences imposed by the trial court and remanded the case to the trial court for resentencing because the trial court failed to recognize that it had discretion to set the maximum sentences under Mich. Comp. Laws § 769.12.[3] In all other respects, petitioner's application for leave to appeal was denied because the court was not persuaded that the remaining question presented should be reviewed by the court. (ECF No. 8-14, PageID.1056).

On October 3, 2013, petitioner filed his habeas corpus petition.

## Discussion

### I. Sixth Amendment

In Ground I, petitioner argues that the Michigan Supreme Court's holding that the *Strickland* standard rather than the *Cronic* standard applied was contrary to or an unreasonable application of *Cronic* and its progeny, particularly *Bell v. Cone*, 535 U.S. 685 (2002). Petitioner asserts that his attorney's assistance was so deficient that it was equivalent to a constructive denial of counsel altogether. Petitioner argues that prejudice must be presumed in the circumstances of this case. (Petitioner's Brief at 10-14, ECF No. 1, PageID.19-23).

---

[3]The parties have not identified any subsequent change in petitioner's sentences made by Judge Lightvoet. (*See* ECF No. 1, PageID.4, 16; ECF No. 7, PageID.116, 120). The two grounds raised in the habeas corpus petition do not challenge petitioner's sentences.

As a general matter, a criminal defendant claiming ineffective assistance of counsel must show prejudice, that is, that counsel's allegedly deficient performance resulted in an unreliable or fundamentally unfair outcome in the proceeding. *See Strickland*, 466 U.S. at 687, 694. In applying the prejudice prong, however, the Supreme Court has identified narrow categories of cases in which prejudice is presumed: (1) when there has been an actual or constructive denial of the assistance of counsel altogether, *see Mickens v. Taylor*, 535 U.S. 162, 166 (2002); (2) when counsel is burdened by an actual conflict of interest, *see Cronic*, 466 U.S. at 658-60; or (3) where there are "various kinds of state interference with counsel's assistance," *see Smith v. Robbins*, 528 U.S. 259, 287 (2000). In these situations, prejudice is so likely to occur that a case-by-case inquiry is unnecessary. *See Strickland*, 466 U.S. at 692. Petitioner attempts to rely on this line of cases, asserting that the performance of his attorney at trial was so deficient that petitioner was essentially denied counsel altogether and that prejudice must be presumed.

The United States Court of Appeals for the Sixth Circuit and lower courts within the Sixth Circuit recognize that the narrow *Cronic* exception applies "only where the constructive denial of counsel and the associated collapse of the adversarial system is imminently clear." *Moss v. Hofbauer*, 286 F.3d 851, 861 (6th Cir. 2002); *see, e.g.*, *Altamimi v Berghuis*, No. 1:12-cv-358, 2015 WL 5749476, at *2 (W.D. Mich. Sept. 30, 2015); *Anderson v. Berghuis*, No. 1:10-cv-349, 2015 WL 566619, at *10 (W.D. Mich. Feb. 11, 2015); *Dunning v. Napoleon*, No. 2:11-cv-10543, 2014 WL 462426, at *6 (E.D. Mich. Feb. 5, 2014). It is limited to "situations involving constitutional error of the

first magnitude, which cannot be cured even if no prejudice is shown." *Moss*, 286 F.3d at 860. Examples of performance giving rise to *per se* prejudice include counsel "sleeping through critical proceedings, expressing contempt and unmistakable personal antagonism towards the client in the presence of a jury or affirmatively declining to present a defense." *See Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007) (citations omitted).

The Supreme Court's decision in *Bell v. Cone*, 535 U.S. 685 (2002) bolsters, rather than undermines, the Michigan Supreme Court's decision that the *Strickland* standard applied. In *Bell v. Cone*, the Supreme Court reversed a Sixth Circuit decision holding that *Cronic* should have controlled that state court's analysis. The Supreme Court held that the habeas claim "was governed by *Strickland*, and that the state court's decision was neither 'contrary to,' nor involved an unreasonable application of, clearly established Federal law under the provisions of 28 U.S.C. § 2254(d)(1)." 535 U.S. at 688-89. In reaching its decision, the Supreme Court emphasized that, in order to fall within the second exception recognized in *Cronic*, the attorney's failure must be complete." 535 U.S. at 697. Counsel must "entirely fail[]" to subject the prosecution's case to meaningful adversarial testing. *Id.* It was not enough for a habeas petitioner to claim some specific attorney errors. "[T]he state court correctly identified the principles announced in *Strickland* as those governing the analysis of the [habeas petitioner's] claim." 535 U.S. at 698. The Supreme Court found "no merit" in the habeas petitioner's "contention that the state court's adjudication was contrary to [its]

clearly established law." *Id.* The Court went on to hold that the state court's adjudication was not an unreasonable application of *Strickland. Id.* at 698-702.

More recently, in *Woods v. Donald*, 135 S. Ct. 1372 (2015), the Supreme Court reversed a Sixth Circuit decision, which held that a decision of the Michigan Court of Appeals was both contrary to and an unreasonable application of the Court's decision in *Cronic.* The Supreme Court noted that, in the "normal course," a petitioner claiming ineffective assistance of counsel is required to satisfy both prongs of the *Strickland* test and the reviewing court must engage in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. 135 S. Ct. at 1375. "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.' " 135 S. Ct. 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).

In *Woods v. Donald*, the Supreme Court emphasized that, "if the circumstances of a case are only 'similar to' [its] precedents, then the state court decision is not 'contrary to' the holding in those cases." *Id.* at 1377. The Court observed that the Sixth Circuit had "framed the issue at too high a level of generality." *Id.* The Court went on to hold that the state court's decision was not an unreasonable application of clearly established Federal law, as determined by the Supreme Court. *Id.* "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims. *Id.* (citation and quotation omitted). The Supreme Court noted that the contours of the *Cronic* decision were not clear, and a fairminded jurist could find that a presumption of prejudice was not warranted by counsel's short absence during testimony about other defendants where that testimony was irrelevant to defendant's theory of the case. The decision of the Michigan Court of Appeals applying the *Strickland* standard, rather than the *Cronic* standard, "was not the 'extreme malfunction' required for federal habeas relief."[4] 135 S. Ct. at 1378.

The decision of the Michigan Supreme Court holding that the *Strickland* standard is the applicable standard withstands scrutiny under 28 U.S.C. § 2254(d)(1).

## II.   Ineffective Assistance of Counsel

In Ground II, petitioner argues that, "under the framework established in *Cronic*, petitioner did not receive effective assistance of trial counsel." (Petitioner's Brief at 15-19, ECF No. 1, PageID.24-28). Ground II does not provide a basis for federal habeas corpus relief. It is built on the faulty premise that the *Cronic* standard, rather than the *Strickland* standard, applies. Further, petitioner has not demonstrated that the decision of the Michigan Court of Appeals rejecting his claims of ineffective assistance of counsel was contrary to, or involved an unreasonable

---

[4]Petitioner's claims of ineffective assistance of counsel are insufficient to satisfy the *Strickland* standard, let alone the kind of constitutional error "of the first magnitude" where *Cronic* would apply. Petitioner's invocation of *Cronic* is an attempt to avoid the decision of the Michigan Court of Appeals, which found no prejudice to petitioner stemming from the challenged conduct of defense counsel, as well as the AEDPA deference to which the state court decision is entitled.

application of, clearly established Federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).

In *Strickland v. Washington*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  466 U.S. at 689.  Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.*  (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  On the prejudice prong, petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

Because the Michigan Court of Appeals decided petitioner's claims of ineffective assistance of counsel on their merits, its decision on each claim must be afforded deference under AEDPA.  *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102.  To receive habeas relief, petitioner must demonstrate that the state court's decisions were contrary to, or represented an unreasonable application of, *Strickland v. Washington*.  *See Bell v. Cone*, 535 U.S. at 698-99.

-18-

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decisions applied *Strickland* incorrectly. Rather, petitioner must show that the state courts "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. at 1375-77; *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015). Petitioner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

The Michigan Court of Appeals applied the *Strickland* standard and rejected petitioner's claims for lack of merit. The Court finds that petitioner has not shown that the state court decision rejecting this claim was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

## III.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDonnell*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the Court has examined each of petitioner's claims under the *Slack* standard.

Petitioner cannot demonstrate that reasonable jurists would find that the denial of habeas corpus relief on each of the grounds raised in his petition is debatable or wrong. *See Slack*, 529 U.S. at 484. Accordingly, the Court will enter an order denying petitioner a certificate of appealability.

## <u>Conclusion</u>

For the foregoing reasons, the habeas corpus petition will be denied.


Dated:   January 19, 2017              /s/ Paul L. Maloney
                                       Paul L. Maloney
                                       United States District Judge